**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FILED - USDC - FLMD - FTM
NOV 18 2026 AM10:28

MICHAEL R. NELSON,

Plaintiff,

v.

Case No. 2:26-cv-3105-KCD-NPM

QUAIL CREEK COUNTRY CLUB, INC.,
a Florida not-for-profit corporation,

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael R. Nelson, proceeding pro se, sues Defendant Quail Creek Country Club, Inc. (the "Club") and alleges:

## NATURE OF THE ACTION

1. This is an action by a resigned equity member of a private golf club to recover the equity payout the Club owes him and to obtain a declaration of the terms that govern that payout.

2. Plaintiff joined the Club in 2007 as a Class A golf member and paid a $35,000 joining fee. Under the bylaws in effect when he joined, a resigned member's membership certificate was held for resale and the sale price was divided between the resigned member and the Club.

3. After Plaintiff resigned, the Club adopted a different payout rule, now Article 4.11 of its bylaws. Under it, the Club keeps the full initiation fees from three new Class A members and pays one resigned member only when a fourth joins. The Club has applied that later rule to Plaintiff and has not paid him.

4. Plaintiff contests every amendment to the Club's bylaws adopted after he joined in 2007, including the 2020 amendment that created Article 4.11 and the restated bylaws the Club made effective on March 23, 2026, to the extent the Club relies on any of them to change, delay, or reduce his right to payment.

## PARTIES

5. Plaintiff Michael R. Nelson is a natural person who resides in and is domiciled in Thompson, Susquehanna County, Pennsylvania. He is a citizen of Pennsylvania.

6. Defendant Quail Creek Country Club, Inc. is a not-for-profit corporation organized under Chapter 617, Florida Statutes. Its bylaws state that it is located at 13300 Valewood Drive, Naples, Florida 34119, and its principal place of business is in Naples, Collier County, Florida. The Club is a citizen of Florida.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Pennsylvania, the Club is a citizen of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The amount in controversy is Plaintiff's equity payout right, which the Club's general counsel has valued in writing at $87,500. Under the Club's reading of Article 4.11, Plaintiff will be paid only if and when enough new Class A memberships are sold to reach his place on the list. The Club has stated no date by which that will occur and has no obligation to sell any number of new memberships. The Club's position therefore puts the entire payout right at risk, not merely its timing, and the value of the declaratory relief sought equals the value of that right.

9. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57. An actual controversy exists because the Club has stated in writing that it applies Article 4.11 to Plaintiff, has not paid him, and has taken the positions Plaintiff disputes.

10. The Club is subject to personal jurisdiction in Florida because it is a Florida corporation with its principal place of business in Florida.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the Club resides here and a substantial part of the events giving rise to

the claims occurred in Collier County. Collier County lies within the Fort Myers Division. Local Rule 1.04.

## GENERAL ALLEGATIONS

***A. Plaintiff joins the Club as a Class A equity golf member.***

12. In 2007, Plaintiff applied for membership in the Club. The Club approved the application and admitted Plaintiff as a Class A golf member upon payment of a $35,000 joining fee. A copy of the application file the Club produced to Plaintiff is attached as Exhibit A.[1]

13. The Club's bylaws in effect in 2007 (the "2007 Bylaws") are attached as Exhibit B. The Club produced them to Plaintiff on August 5, 2026, through its general counsel, as "a copy of the Club By-Laws in effect when you joined."

14. The bylaws and the membership documents the Club required Plaintiff to sign to join together form a written contract between Plaintiff and the Club.

15. Section 3.10 of the 2007 Bylaws provides:

> Membership.
>
> (a) Upon the sale of a Class A or Class B member's membership and payment by a new member of the Joining Fee in full, the total purchase price shall be distributed as follows:

---

[1]Plaintiff has redacted personal identifiers from Exhibit A as permitted by Federal Rule of Civil Procedure 5.2(a).

1. The resigned member shall receive from the sale proceeds, first, the amount of designated refundable equity assessments (e.g., the clubhouse renovation assessment) previously paid by the resigned member, and second, his or her applicable equity percentage, if any, of the balance of the sale proceeds (the total thereof being hereinafter referred to as the "Resigned Member's Share"); and

2. The Club shall receive the remainder of the sale proceeds (referred to herein as a "Transfer Fee").

For example, if a Class A member resigns and such Class A member has a 50% equity percentage and paid the assessment of $16,000 for the clubhouse renovation, and his/her membership is sold for a $35,000 joining fee, he/she would receive from such $35,000 (a) $16,000 for the clubhouse renovation assessment, plus (b) 50% of the balance of $19,000 or $9,500 for a total of $25,500. The $9,500 balance of the joining fee paid for his/her membership is paid to the Club as a Transfer Fee. If such resigning Class A member had not paid the $16,000 Clubhouse assessment and had a 50% equity percentage he/she would receive 50% of the $35,000 joining fee, or $17,500, and the balance of $17,500 is paid to the club as a Transfer Fee.

(b) Notwithstanding the foregoing, there shall be deducted from the Resigned Member's Share and paid to the Club all dues, assessments and other charges then due and owing from the resigned member to the Club together with any accrued interest thereon.

(c) The equity percentages of the various classes of membership are:

1. 90% for Class A Charter Members;

2. 80% for Class A golf members who purchased their membership prior to January 20, 1986 or who purchased their membership at any time from the developer's inventory;

3. 50% for Class A golf members who purchased their memberships on or after January 20, 1986;

4. 80% for Class B social members; and

5. none (0%) for all other classes of membership.

(d) If a membership is sold, the purchaser shall have the equity percentage then in effect for the class of membership sold (e.g., if an 80% equity Class A golf membership is sold on or after January 20, 1986, the purchaser's equity percentage is 50%).

Under that section, when a resigned member's certificate was sold, the purchase price was divided. The resigned member received any refundable equity assessments plus the applicable equity percentage of the balance, and the Club received the remainder as a transfer fee.

16. Section 3.10(c)(3) of the 2007 Bylaws sets the equity percentage for a Class A golf member who purchased a membership on or after January 20, 1986 at fifty percent (50%). Plaintiff purchased his membership in 2007, so his equity percentage is fifty percent. The Club agrees. Its general counsel calculated Plaintiff's payout at exactly fifty percent of the current initiation fee.

17. Section 3.9 of the 2007 Bylaws provides that a resigned member's certificate was held in escrow for resale, and that the resigned member owed dues only until the earlier of the sale of the certificate or twelve months.

18. The 2007 Bylaws did not permit the Club to keep the proceeds of new memberships for itself before paying resigned members whose certificates were held for resale.

19. Section 13.1 of the 2007 Bylaws governs amendments. It required a two-thirds vote of the Board of Directors and ratification by two-thirds of the voting members. The Club's current bylaws contain the same requirement. Current Bylaws § 12.2.

20. Article 4.7.A of the Current Bylaws binds members only to "use the Club and conduct themselves" in accordance with the bylaws and rules "as they may be amended." It does not address a resigned member's right to payment.

**B. *Plaintiff resigns and is placed on the payout list.***

21. Plaintiff resigned his membership in writing in or about 2019, and his resignation became effective that year.

22. When his resignation became effective, Plaintiff had satisfied all of his financial obligations to the Club, surrendered his membership for resale, and was placed on the Club's list of resigned members awaiting payment (the "Payout List").

23. Plaintiff's right to be paid under the terms then in effect accrued when his resignation became effective and his membership was surrendered for resale.

C. *After Plaintiff resigns, the Club adopts a different payout rule and applies it to him.*

24. In or about 2020, after Plaintiff's resignation was effective, the Club adopted or purported to adopt a new payout rule. The rule now appears as Article 4.11 of the Club's bylaws effective March 23, 2026 (the "Current Bylaws"), attached as Exhibit C.

25. Article 4.11.A of the Current Bylaws provides in part:

> "Upon the approval of three (3) new Class A Memberships and payment of the full Initiation Fees, those three Initiation Fees will be retained by the Club. Upon the next approval of a new Class A Membership and payment of the full Initiation Fee, the Member next on the Payout List will be paid . . . ."

26. Article 4.11 contains no adoption date, no effective date, and no provision stating that it applies to members who resigned before it was adopted.

27. The Club's general counsel confirmed in writing that "the Club changed the rules (current By-Law 4.11) in 2020."

28. Article 4.11 does not modify the resale mechanism in the 2007 Bylaws. It replaces it with a mechanism under which the Club keeps three of every four new Class A initiation fees.

29. Section 12.3 of the Current Bylaws states that they "supersede the original Bylaws of the Club and all amendments thereto" and "shall be effective

on and after March 23rd, 2026." The March 23, 2026 restatement is itself an amendment to the bylaws.

30. Plaintiff's July 2, 2026 letter asked the Club for every version of its governing documents in force since he joined, every amendment to the resignation, refund, and waiting-list provisions, and every notice of those changes. In response, the Club produced the 2007 Bylaws, the Current Bylaws, its Club Standards, and Plaintiff's application file. It produced no intervening version of the bylaws, no amendment, no board resolution, no meeting notice, no ballot, and no record of any membership vote.

31. Plaintiff refers to provisions of the Current Bylaws in this Complaint as the Club's own statements of its rules. Plaintiff does not concede that the Current Bylaws, or any amendment adopted after 2007, were validly adopted or apply to him.

32. Upon information and belief, neither the 2020 amendment nor any other amendment to the bylaws adopted after 2007 on which the Club relies was ratified by two-thirds of the voting members as required by Section 13.1 of the 2007 Bylaws and Section 12.2 of the Current Bylaws. The basis for this belief is the Club's written statement that it does not have "correspondence to members regarding changes in By-Laws or draft amendments," and its failure to produce the amendment, the board minutes approving it, the meeting notice and ballot

required by Section 9.3 of the Current Bylaws, or any record of a membership vote.

**D. *Plaintiff requests information, and the Club refuses to pay.***

33. On July 2, 2026, Plaintiff sent the Club's General Manager, Chris Evans, a written request for the Club's governing documents relating to equity membership and refunds, all versions in force since he joined, notices of amendments, confirmation of his position on the Payout List and how the list is maintained, the refund formula and calculation, the replacement ratio and its source, and the number of new equity members admitted and payouts made since his resignation.

34. On August 5, 2026, the Club's general counsel, John M. Mullin, Esq., responded in writing (the "Mullin Letter," attached as Exhibit D).[2] In it, the Club stated that:

(a) Plaintiff joined the Club "as a Class A member in 2007 for a $35,000 Joining Fee";

(b) Plaintiff "is currently Number 57 on the payout list";

(c) "Using the current initiation fee of $175,000, your payout would be $87,500";

[2]Plaintiff has redacted personal medical information, which is unrelated to the claims in this action, from Exhibit D.

(d) "the records on this are unclear since the Club changed the rules (current By-Law 4.11) in 2020";

(e) "the Club received deposits for 350 new Golf members since May 2019 and has paid 178 equity payouts during this time"; and

(f) "We don't have correspondence to members regarding changes in By-Laws or draft amendments."

35. The Club reports that it has made 178 equity payouts since May 2019, yet Plaintiff remains number 57 on the Payout List. The Club's figures cannot be reconciled with Article 4.11, or with Plaintiff's position on the list, without the Club's records of admissions and payouts by date.

36. Upon information and belief, had the resale terms in the 2007 Bylaws been applied to Plaintiff, the sales of new Class A memberships since his resignation, which the Club puts at 350 new golf member deposits since May 2019, would have reached Plaintiff's place on the Payout List, and Plaintiff would already have been paid.

37. The Mullin Letter offered Plaintiff no payment and no date of payment. It stated that the Club applies Article 4.11 to Plaintiff's payout.

38. Plaintiff has not received any payment of his equity. The Club continues to withhold payment under Article 4.11 and has not stated any date by which Plaintiff will be paid.

39. All conditions precedent to this action have occurred, have been performed, or have been waived or excused.

**COUNT I**

**Declaratory Judgment (28 U.S.C. § 2201)**

40. Plaintiff realleges paragraphs 5, 6, and 12 through 39.

41. An actual, substantial, and continuing controversy exists between Plaintiff and the Club about which bylaws govern Plaintiff's equity and whether the amendments the Club relies on were validly adopted.

42. Plaintiff's right to payment under the 2007 Bylaws vested no later than the date his resignation became effective. No amendment the Club adopted could impair that right, and no amendment power in the Club's governing documents reached the payout right of a member who had already resigned.

43. Plaintiff seeks a declaration that:

(a) Plaintiff's equity payout is governed by the 2007 Bylaws, and no amendment to the bylaws adopted after he joined, including Article 4.11 and the March 23, 2026 restatement, changes, delays, or reduces his right to payment;

(b) the Club may not apply Article 4.11's three-retained, one-paid mechanism to Plaintiff;

(c) Plaintiff's equity percentage is fifty percent; and

(d) each amendment to the bylaws adopted after 2007 on which the Club relies to change Plaintiff's rights, including the 2020 amendment adopting Article 4.11 and the March 23, 2026 restatement, is void because it was not adopted by the Board and ratified by two-thirds of the voting members as the Club's bylaws require.

**COUNT II**

**Breach of Contract**

44. Plaintiff realleges paragraphs 5, 6, and 12 through 39.

45. The 2007 Bylaws and Plaintiff's membership documents are a valid and enforceable written contract between Plaintiff and the Club.

46. Plaintiff performed his obligations under the contract. He paid his joining fee and dues, resigned in writing, satisfied his financial obligations to the Club, and surrendered his membership for resale.

47. The Club breached the contract by failing to pay Plaintiff his equity when it became due under the governing terms, and by withholding payment under Article 4.11, a rule the 2007 Bylaws do not contain.

48. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial, which exceeds $75,000, plus prejudgment interest from the date payment became due.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Quail Creek Country Club, Inc., and:

A. declare the rights of the parties as set out in Count I;

B. award Plaintiff damages in an amount to be proven at trial;

C. award prejudgment and post-judgment interest;

D. award Plaintiff his taxable costs; and

E. grant such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2026.

Respectfully submitted,

Michael R. Nelson, pro se
1820 State Route 2036
Thompson, Pennsylvania 18465
Telephone: (212) 233-5083
Email: nelson@nelson.legal

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| **A** | Plaintiff's membership application file (2007), as produced by the Club on August 5, 2026 (personal identifiers redacted) |

| | |
|---|---|
| **B** | Bylaws of Quail Creek Country Club, Inc. in effect in 2007, as produced by the Club on August 5, 2026 |
| **C** | Bylaws of Quail Creek Country Club, Inc. effective March 23, 2026 |
| **D** | August 5, 2026 letter from John M. Mullin, Esq., general counsel to the Club (personal medical information redacted) |